IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>           Plaintiff,  )<br>  )<br>v.  )<br>  )<br>ETHELWALDO TORRES  )<br>RODRIGUEZ,  )<br>  )<br>           Defendant.  ) | Case No. CR-20-00084-JD |

**ORDER**

Before the Court is Defendant Ethelwaldo Torres Rodriguez's ("Mr. Rodriguez") Motion and Request for Early Termination of Supervised Release ("Motion"). [Doc. No. 7]. The United States filed a response in opposition to the Motion ("Response") [Doc. No. 12]. No reply was filed by Mr. Rodriguez. For the following reasons, the Court denies the Motion.

Mr. Rodriguez pled guilty to and was convicted of possession with intent to distribute methamphetamine. [*See* Doc. No. 3 at 14]; *see also* Presentence Investigation Report ("PSR") [Doc. No. 14 at ¶ 3]. On April 30, 2007, Judge James H. Payne sentenced Mr. Rodriguez to a term of custody of 250 months and 5 years of supervised release. [Doc. No. 3 at 15–16]. As part of his term of supervised release, Mr. Rodriguez was prohibited from illegally possessing a controlled substance or firearm, ammunition, destructive device, or any other dangerous weapon. [Doc. No. 3 at 16]. Additionally, the Court imposed standard and special conditions of supervision. [*Id.* at 16–17].

Mr. Rodriguez was released from prison to supervision on April 26, 2019.[1] Response at 2. Mr. Rodriguez urges the Court to terminate his remaining term of supervised release "so that [he] may begin any and all steps to be a dad." Motion at 2. He cites to his daughter's mother's ongoing "DHS case" and his success while under supervision as reasons for early termination. *See* Motion at 2–3.

Although the United States commends Mr. Rodriguez "for his performance on supervised release thus far," it does not agree that his circumstances warrant early termination of his five-year term of supervised release primarily because of the nature and circumstances of Mr. Rodriguez's offense and his criminal history. Response at 4. Government counsel states that he "has been unable to confirm whether Mr. Rodriguez'[s] status on supervised release is having any impact on any pending DHS matters as he reports or whether that status is currently precluding him from having custody of his child." *Id.* at 3–4. However, the United States does not believe that Mr. Rodriguez's status as a federal supervisee "would cause such complications," nor has it found any evidence to support such a claim. *Id.* at 4. The Court permitted Mr. Rodriguez to file a reply, but he did not, and there is no additional information of record regarding the DHS matter.

A district court may terminate a term of supervised release and discharge the defendant at any time after expiration of one year of supervision if, after considering

---

[1] The Court notes that Mr. Rodriguez's sentence was reduced from 250 months to 188 months of imprisonment by Judge Payne on June 1, 2015, pursuant to 18 U.S.C. § 3582(c)(2). [Doc. No. 85 filed in N.D. Okla. Case No. 06-cr-00131-JHP].

certain factors under 18 U.S.C. § 3553, the court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice . . . ." 18 U.S.C. § 3583(e)(1); *cf. Rhodes v. Judiscak*, 676 F.3d 931, 933 (10th Cir. 2012) ("Whether to grant a motion to terminate a term of supervised release under 18 U.S.C. § 3583(e)(1) is a matter of sentencing court discretion.").

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Here, the conditions of supervised release require Mr. Rodriguez, among other conditions, to not illegally possess a controlled substance or a firearm and to participate in substance abuse aftercare, as directed by the probation officer. Like those conditions at issue in *Johnson*, "[t]hese conditions illustrate that supervised release, unlike incarceration, provides individuals with postconfinement assistance." *Id*. at 60.

Mr. Rodriguez has a little less than 6 months remaining on his term of supervised release. During his 4.5 years of supervision, Mr. Rodriguez has had some compliance issues. There were five instances where he failed to submit random urine drug tests in 2020 and 2021. [Doc. No. 5 at 2]. Additionally, in 2022, he received traffic citations for driving without a driver's license, changing lanes improperly, and speeding. [Doc. No. 6 at 2]. The Court notes, however, that Mr. Rodriguez has not had a positive drug test during his 4.5 years of supervision and that he has satisfied his financial obligations, including his $5,000 fine. Response at 3. Additionally, Mr. Rodriguez has maintained steady employment while under supervision, and he is currently working two jobs. *See id.*

Mr. Rodriguez has made strides in rebuilding his life since his release and the Court commends his efforts. It is, of course, always encouraging when a person has made a positive turn in his life. Nevertheless, upon consideration of the Motion and the Response, the Court finds that, after considering the applicable factors in § 3553(a), early termination would not serve the interest of justice. The Court finds that, when considering the nature and circumstances of the offense and Mr. Rodriguez's criminal history, a longer period of post-incarceration monitoring is necessary.

As noted in the Response and reflected in the PSR, Mr. Rodriguez has a significant criminal history that predates his federal conviction and sentence. *See* Response at 4; PSR ¶¶ 28–41. This history includes crimes involving weapons possession, drug possession, and violence spanning more than 10 years. Additionally, this history led to Mr. Rodriguez's classification in Criminal History Category VI, which played a part in the lengthy sentence he received. Mr. Rodriguez, at the time of his arrest in July 2006, was a significant methamphetamine distributor and supplier in a drug distribution ring in Tulsa. *See* PSR ¶¶ 5–14. As part of his underlying federal offense, he was held accountable for possessing and distributing almost 7 kilograms of methamphetamine from the summer of 2004 through May 3, 2006. *See id.* ¶¶ 6, 19. Additionally, Tulsa police found more than $30,000.00 of drug proceeds in Mr. Rodriguez's residence on May 3, 2006, when they executed a search warrant. *See id.* ¶¶ 10–11. Thus, it is clear he was not a low-level player in the drug distribution enterprise.

The drug quantity of 6.99 kilograms of methamphetamine led to a mandatory

minimum term of incarceration and a mandatory minimum term of supervised release of four years up to life under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). *See* PSR ¶¶ 58–59, 60–61. The Court agrees with the United States that, in enacting these statutes, "Congress saw the need and justification to ensure that drug trafficking offenders were guaranteed significant periods of supervision with no statutory cap." Response at 4.

The Court also notes Mr. Rodriguez's significant substance abuse history. PSR ¶ 53. Addiction to these substances is difficult to overcome. Although the Court has suspended the treatment portion of Mr. Rodriguez's substance abuse aftercare requirement and Mr. Rodriguez has had no positive drug tests while under supervision, continued drug testing and supervision aids in Mr. Rodriguez's ongoing rehabilitation, provides deterrence, and protects the community.

For the reasons stated above, the Court DENIES Mr. Rodriguez's Motion and Request for Early Termination of Supervised Release [Doc. No. 7]. The Court again commends Mr. Rodriguez for the progress he has made during his period of supervision and encourages him and wishes him success in completing the remainder of his term.

IT IS SO ORDERED this 7th day of November 2023.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE